UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON DEJULE,

Plaintiff/Counter-Defendant,

v.

Hon. Robert J. Jonker

MILLERKNOLL, INC.,

Case No. 1:23-cv-969

Defendant/Counter-Claimant.

**ORDER**

This matter is before the Court on Plaintiff's Motion to Compel Production of Documents Improperly Withheld as Privileged or for In Camera Inspection of the Same. (ECF No. 156.) A hearing was held August 15, 2025, and the Court entered an order allowing the parties to submit additional briefing and supplemental declarations and for Defendant to deliver to the undersigned's chambers any contested documents. (ECF No. 172.) Upon review of the parties' submissions (ECF Nos. 156, 157, 162, 174, 175), the motion is denied.

In the course of discovery in this case, Defendant MillerKnoll, Inc.,[1] produced three of the eight documents the privilege designation of which Plaintiff Aaron DeJule contests. Realizing its error, MKI then requested their return. Having reviewed the documents before MKI requested their return, DeJule claims they (and similar documents that were never produced) are not privileged and moves the Court to compel their production. MKI argues that the documents are protected pursuant to both the attorney-client privilege and the work product doctrine. MKI further

[1] For ease of reference, I refer to both Herman Miller, Inc., and MillerKnoll, Inc., as MKI.

argues that DeJule violated the protective order when he "used" the contents of the disputed documents by summarizing them in bringing his motion.

**1. Factual Background**

DeJule contacted John Aldrich, Herman Miller's then-chief engineer, in 2018, and again in 2019 and 2021. (ECF No. 174, PageID.4689.) The two discussed DeJule's patents as they related to MKI's products. (ECF No. 175-4, PageID.4839.) Aldrich testified that he recalled that counsel for MKI (Phoebe Bower) instructed him to prepare an analysis of the patents at issue. (ECF No. 175-3, PageID.4833-34; *see also* ECF No. 175-5, PageID.4844.) Attorney Bower likewise provided a declaration that MKI employees sought legal advice from her beginning in April 2019, and that she provided legal advice regarding the dispute, which they anticipated could lead to litigation. (ECF No. 175-4, PageID.4839-41.) Attorney Bower testified that, in April and May of 2021, she requested that Diane Turnwall provide her with financial and marketplace analyses and that Aldrich prepare a technical analysis of DeJule's patents as they related to MKI's products. (ECF No. 175-4, PageID.4840-41.)

In Attorney Bower's declaration, she provided context for MKI's privilege log entries, as follows:

- Entry Nos. 183-91 are a May 13, 2021 email to Aldrich containing information relating to DeJule's patents that Attorney Bower provided to Aldrich for his use in preparing the technical opinions she requested from him.
- Entry No. 197 is an email Aldrich sent on May 21, 2021, at 11:55 A.M. to Attorney Bower and Daniel Jones (outside patent counsel) attaching Entry No. 198, Aldrich's analysis of DeJule's patents, prepared at Attorney Bower's request.

- Entry Nos. 192, 194, 196, and 198 are identical copies of the analysis and opinions Aldrich authored regarding DeJule's patents and were prepared at Attorney Bower's request.
- Entry No. 202 is an email Aldrich sent to Attorney Bower and Attorney Jones on May 21, 2021, at 1:20 P.M., attaching Entry No. 203, an updated version of Entry No. 198.
- Entry Nos. 199, 200, 201, and 204 are copies of Entry No. 203.

(ECF No. 175-4, PageID.4841-42.) Attorney Bower further notes that she requested and directed that Aldrich prepare all of the technical analysis and opinions reflected in Entry Nos. 192, 194, 196, 198, 199, 200, 201, 203, and 204. (*Id.* at PageID.4842.) She also states that Aldrich sent the emails in Entry Nos. 193, 195, 197, and 202, as part of his provision of those opinions and analysis to her, so that she could provide legal advice regarding the potential dispute with DeJule. (*Id.*) Aldrich submitted a declaration that confirms Attorney Bower's descriptions of the documents and course of events. (ECF No. 175-5, PageID.4845-46.)

### 2. Privilege Standards

The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Whether the attorney-client privilege applies should be determined on a case-by-case basis. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). The privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390; *see also Shearing v. Iolab Corp.,* 975 F.2d 1541, 1546 (Fed. Cir. 1992) ("[T]he privilege protects a client's confidential communications to an attorney necessary to obtain legal counseling.") (citing *Fisher*, 425 U.S. at

403). "In the corporate context, the privilege applies to communications of any corporate employee on matters within the scope of the employee's corporate duties when the employee is aware that the information is being provided to enable the corporation to obtain legal advice." *Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2015 WL 4425947, at *3 (W.D. Mich. July 20, 2015) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)); *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006); *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). That is true even if the legal advice also has a business purpose. *In re FirstEnergy Corp.*, No. 24-3654, 2025 WL 2335978, *2 (6th Cir. Aug. 7, 2025).

The work-product doctrine covers documents "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). This doctrine protects against disclosure of the mental impressions, conclusions, opinions, or legal theories of any attorney concerning the litigation. *Upjohn*, 449 U.S. at 400–01. It also "protects any document prepared in anticipation of litigation by or for the attorney." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). This protection ensures that an attorney may "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Courts determine whether work-product protection applies by asking whether documents were created "because of" a party's "reasonable" anticipation of litigation, as opposed to its ordinary business purposes. *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006).

**3. Privilege Analysis**

A review of the disputed documents submitted in camera, the privilege log, the deposition testimony of Aldrich, Turnwall, and Attorney Bower, and declarations MKI submitted from Aldrich, Attorney Bower, and Attorney Apel confirms that the disputed documents are protected

as attorney-client privileged. As of 2021 (and indeed much earlier), MKI reasonably anticipated that DeJule might bring a lawsuit against MKI for infringement of his patents, and counsel for MKI requested technical information from the company's chief engineer to allow her to provide legal advice to her client. The provision of that technical advice, done as it was so that counsel could provide legal advice, is protected as attorney-client privileged. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480-81 (E.D. Pa. 2005). DeJule argues that the technical analysis should be viewed separately from the attorney-client communication, but that misconstrues the nature of the documents. Indeed, the technical analysis was the substance of the communication to counsel for the purpose of informing her provision of legal advice and, thus, falls squarely within the privilege.

Further, MKI appropriately explained that the documents listed as "undistributed" in the privilege log were identical to those sent to counsel, and were simply electronic copies saved locally. (ECF No. 175-2, PageID.4820-26.) A copy of an attorney-client privileged communication remains privileged, so long as it is kept in a confidential manner. *SmithKline Beecham*, 232 F.R.D. at 480. To hold otherwise would entirely defeat the purpose of the privilege.

Two documents merit further discussion. There are two copies of emails from Aldrich to Diane Turnwall and Amy Smith, both sent on May 21, 2021, at 11:48 AM, attaching Aldrich's technical analysis (Entry Nos. 193-96). Seven minutes later, Aldrich sent the same attachment to Attorneys Jones and Bower (Entry No. 197-98). DeJule argues that, because an attorney was not included on the initial email, the material is not privileged.

In light of the deposition testimony, however, the email from Aldrich to Turnwall and Smith is most fairly viewed as part of an attorney-client privileged communication. Aldrich testified at his deposition that he never provided his analysis of DeJule's patents outside the context

of discussions with counsel and that Attorney Bower directed him to prepare the analysis at issue. (ECF No. 174-1, PageID.4708, 4714-15.) He further testified that he "would not have done such an analysis if it wasn't at the request of our internal counsel." (ECF No. 174-1, PageID.4715.) At Turnwall's deposition, she testified that it was not uncommon for Attorney Bower to reach out to her and to the technical team to perform an evaluation if there was a concern about patent infringement. (ECF No. 174-2, PageID.4728.) Turnwall further testified that Attorney Bower often contacted her initially, and then Turnwall would bring in other people, including Aldrich "almost 100 percent of the time."[2] (*Id.*, PageID.4729.) She also testified that Attorney Bower "would always have been the originator of any request of [her] involvement." (*Id.*, PageID.4730.) Likewise, during her deposition, in discussing Entry No. 193, Attorney Bower testified that she would have told "Aldrich to prepare this analysis, or Diane Turnwall would have relayed my instructions on my behalf." (ECF No. 162-1, PageID.4552-54.) When asked if Aldrich's analysis was passed on to her, Attorney Bower indicated that it would have been, and identified Entry No. 197 as possibly being that communication. (*Id.*, PageID.4554.) She also specifically recalled directing Aldrich's analysis. (*Id.*, PageID.4554-55.)

In connection with its supplemental briefing, MKI submitted declarations from Aldrich and Attorney Bower that further explain the circumstances surrounding these emails. In his declaration, Aldrich states that he sent the emails in 193 and 195 to Turnwall and Smith

> because they were working on providing related analyses and opinions to Ms. Bower so that Ms. Bower could provide legal advice to the company regarding Mr. DeJule's communications about the Cosm chair. I wanted to coordinate our input regarding the opinions and analyses we would provide to Ms. Bower, and thought, in part, my technical analysis and opinions could impact the analysis they were preparing for Ms. Bower from a financial perspective.

[2] This process is also reflected in Entry No. 197.

(ECF No. 175-5, PageID.4846.) Attorney Bower likewise confirmed that it was her understanding that these emails were sent "as part of providing [Aldrich's] opinions and analysis to me so that I could provide legal advice to the company." (ECF No. 175-4, PageID.4842.)

That Aldrich emailed Turnwall and Smith the analysis immediately before also emailing it to Attorney Bower does not alter the fact that the analysis was requested by Attorney Bower. "In the corporate context, the attorney-client privilege extends to communications, between non-attorney employees, made to obtain or relay legal advice." *McCall v. Procter & Gamble Co.*, No. 1:17-CV-406, 2019 WL 3997375, at *4 (S.D. Ohio Aug. 22, 2019) (collecting cases); *Ajose v. Interline Brands, Inc.*, No. 3:14-CV-1707, 2016 WL 6893866, at *8 (M.D. Tenn. Nov. 23, 2016) (citing *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219 (W.D. Ky. 2006)); *Stryker Corp. v. Ridgeway*, No. 13-1066, 2015 WL 4425947, at *3 (W.D. Mich. July 20, 2015) ("In the corporate context, the privilege applies to communications of any corporate employee on matters within the scope of the employee's corporate duties when the employee is aware that the information is being provided to enable the corporation to obtain legal advice."); *Hall v. Trivest Partners L.P.*, No. 22-12743, 2024 WL 5147015, at *5 (E.D. Mich. Dec. 17, 2024) ("the attorney-client privilege extends to communications made to the attorney's agent for obtaining legal advice"); *The Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Michigan*, No. 14-11349, 2021 WL 3021267, at *2 (E.D. Mich. July 16, 2021) (collecting cases).

Because the attorney-client privilege squarely protects the disputed documents from disclosure, the Court will not address the work product and necessity arguments.

**4. MKI's Sanctions Request**

MKI requests sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(B), which requires the Court to order the payment of a party's reasonable expenses incurred in responding to a motion that is

denied unless the Court finds that the motion was "substantially justified or other circumstances make an award of expenses unjust." While the question is close, the Court finds that the issues discussed above, as well as issues regarding the initial privilege log entries, particularly those only initially indicating work product protection only and describing the document as "analysis reflecting legal advice" where the author was a non-lawyer (ECF No. 157-4, PageID.4277-78), make an award of expenses unjust.

MKI also requests sanctions based on DeJule's "use" of the clawed-back documents in support of his motion. Paragraph 18(c) of the protective order in this case states as follows:

> A party who is notified that it received a protected document must promptly return or destroy the specified information and any copies it has, *must not use or disclose the information*, and must take reasonable steps to retrieve the information if the party disclosed it before being notified.

(ECF No. 65-1, PageID.1079 (emphasis added).) The question the parties present is whether this provision also prevents the "use" or "disclosure" of the documents in connection with a dispute regarding the validity of a claim of privilege.

Courts have noted that case law addressing this type of use in the analogous context of Federal Rule of Civil Procedure 26(b)(5)(B) ("must not use or disclose the information until the claim is resolved"), of which there is little, is mixed. *See In re Google RTB Consumer Privacy Litig.*, No. 21-cv-2155, 2022 WL 1316586, at *2-3 (N.D. Cal. May 3, 2022) (noting few cases but favoring analysis that would preclude use); *Stinson v. City of New York*, No. 10 CIV 4228, 2014 WL 5090031, at *4 (S.D.N.Y. Oct. 10, 2014) (concluding that the receiving party could use the contents of the putatively privileged documents to contest the assertion of privilege where the receiving party learned of the contents prior to the assertion of privilege); *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2012 WL 5193835, at *4 (D. Md. Oct. 18, 2012) (same).

Where there has been a stipulated protective order, at least one court has found that a party in receipt of inadvertently produced privileged material may nonetheless use the material it has received to contest the claim of privilege (albeit considering a protective order distinguishable from this one). *See In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14 MD 2542, 2019 WL 2003959, at *3 (S.D.N.Y. May 7, 2019) (protective order "permits a party that receives, through inadvertence, a document or other information which the adverse party asserts is privileged, may, pending a determination of the claim of privilege, use the content of that document or information for the limited purpose of challenging the assertion of privilege to the extent that the receiving party learned of the contents of the document in issue prior to the producing party's assertion of privilege"). Another court, considering the issue *ab initio*, determined that it would not enter a protective order allowing "use" for purposes of challenging the assertion of privilege. *In re Google RTB Consumer Privacy Litig.*, 2022 WL 1316586, *2-4 (N.D. Cal. May 3, 2022) (resolving a dispute over the language of a protective order and including language ordering that a party in receipt of inadvertently produced privileged documents not use or disclose the contents of the documents in a motion to contest the documents). Thus, while MKI may have the better of the argument, the extent of the protective order's prohibition is not a foregone conclusion.

Assuming without deciding that the protective order precluded use of the clawed back materials for purposes of the privilege dispute, and that the use was a violation of the order, the equities would not favor sanctions in these circumstances. When MKI first produced the technical analyses, DeJule was not clearly on notice that they were privileged, requiring immediate return. This is not a case in which counsel should have been immediately aware that the inadvertently produced document was out of bounds and should not have been reviewed. Moreover, DeJule's

use and disclosure of the contents of the documents at issue was de minimis. At no point did DeJule disclose more than a brief summary of the general contents of the analyses. (ECF No. 157-7, PageID.4335-38; ECF No. 157, PageID.4244, 4348-49.) MKI has not demonstrated (or even argued) that it was prejudiced in any way by DeJule's use or disclosure of the documents in connection with this motion. Nor does it argue that DeJule could not bring this motion without the information about the clawed-back documents. Indeed, the Court has reviewed the documents in camera and is familiar now with their contents. Considering all of these facts, the Court finds that DeJule's use and disclosure of the contents of the clawed-back documents does not warrant sanctions.

Likewise, the Court will not, in its discretion, award sanctions based on DeJule's characterization of deposition testimony or the meet and confer process. The Court does agree with MKI that DeJule's mischaracterization of the deposition testimony substantially undercut his argument. However, not every instance of overzealous advocacy need result in sanctions, absent the warning from the Court that this paragraph provides.

IT IS SO ORDERED.

Dated: September 19, 2025

/s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge